UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Ena Wages,                                                    Civil File No. 12-2905 (PAM/SER)

           Plaintiff,

v.                                                            **MEMORANDUM AND ORDER**

Stuart Management Corporation,
d/b/a StuartCo,

           Defendant.

---

This matter is before the Court on the parties' cross-Motions for Summary Judgment. For the reasons that follow, Plaintiff's Motion for Partial Summary Judgment is granted and Defendant's Motion for Summary Judgment is granted in part and denied in part.

**BACKGROUND**

Defendant Stuart Management Corp. is a property management company that manages more than thirty large apartment complexes and has more than 350 employees. Plaintiff Ena Wages began working for Defendant on November 17, 2008, as a caretaker at one of Defendant's apartment complexes. Wages worked 30 hours per week. (Wages Dep. (Docket No. 47) at 101.) Wages was a good employee with an unblemished record.

In the summer of 2009, Wages was pregnant with her third child, who was due in February. Wages's doctor deemed her pregnancy to be high risk because of a previous ectopic pregnancy. In June or July, Wages called and left a message for Defendant's HR Director Deb Stachowski to inquire about post-birth benefits and leave. (Wages Dep.

(Docket No. 48) at 218.) Wages called again about a week later and left another message specifically stating that she wanted information about FMLA leave and other forms of leave. (Id. at 219.) According to Wages, Stachowski never returned her calls. Stachowski does not recall receiving any messages from Wages. (Stachowski Dep. (Docket No. 68) at 307.)

In October 2009, Wages experienced abdominal pain and cramping. Her doctor, James Shold, determined that she should not vacuum or mop and wrote a note to that effect, which Wages gave to Defendant. (Gaulding Decl. (Docket No. 67) Ex. H.) Stachowski contacted Wages's doctor to verify that there were no other restrictions in place. (Behrenbrinker Aff. (Docket No. 46-2) Ex. J.) Defendant accommodated Wages's restrictions without incident and redistributed the vacuuming and mopping duties to other employees.

In early November, Dr. Shold wrote another note stating that Wages could perform all duties except snow removal. (Gaulding Decl. Ex. M.) Stachowski contacted the doctor's office to see if the previous restrictions were also still in place. (Id.; Stachowski Dep. at 298-99.) An assistant in the doctor's office told her that Wages could not vacuum, mop, or shovel snow. (Stachowski Dep. at 298-99.) Dr. Shold told Wages, however, that she could resume vacuuming and mopping, and Wages represents that she did so. (Wages Dep. at 102-05; Wages Decl. (Docket No. 83) ¶¶ 22-23.)

Then, the week ending November 13, Wages experienced more abdominal pain and cramping and missed work on Monday, Tuesday, and Thursday. (Gaulding Decl. Exs. N, O.) Dr. Shold concluded that she should work no more than 20 hours per week and gave her a note to that effect to give to Defendant. (Id. Ex. P.) The parties agree that the restriction was effective immediately. Wages worked 4.25 hours on November 13.[1] (Id. Ex. O.) That same day, Wages gave the note to her supervisor, Robin Fulton, who emailed it to Stachowski. (Behrenbrinker Aff. (Docket No. 80) Ex A.)

Fulton, Stachowski, and Dave Beddoe, a StuartCo manager, had one or more conversations on November 13 during the course of which they decided to terminate Wages's employment. Fulton testified that although Defendant was "getting by" despite the other restrictions[2] the time restriction was untenable. (Fulton Dep. (Docket No. 67) at 300.) There is no evidence that Defendant planned to terminate Wages's employment based on the earlier restrictions alone.

Wages was not scheduled to work on Saturday or Sunday, but she reported for work on Monday, November 16. Soon after she arrived, Fulton and Stachowski called her to a meeting and fired her effective immediately. Defendant gave Wages a letter stating that it was "unable to accommodate the work restrictions provided by your physician." (Gaulding Decl. Ex. R.)

---

[1] It is unclear whether Wages worked fewer hours than scheduled that day.

[2] Wages testified that she had resumed vacuuming and mopping, but Defendant denies knowing that Wages's doctor had lifted those restrictions. The parties agree that Wages was precluded from shoveling snow at all relevant times.

Wages filed this suit alleging pregnancy discrimination under Title VII and the Minnesota Human Rights Act, retaliation under the Minnesota Parenting Leave Act, and interference and retaliation under the Family Medical Leave Act. Wages moves for partial summary judgment on her FMLA interference claim and Defendant cross moves for summary judgment on all claims.

**DISCUSSION**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996). However, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Id. at 323; Enter. Bank, 92 F.3d at 747. A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

**A.   FMLA Claim**

Both parties have moved for summary judgment on the entitlement aspect of Wages's FMLA claim and Defendant moves for summary judgment on the retaliation aspect of the claim.³ The FMLA provides an eligible employee with twelve workweeks of leave during any twelve-month period if she has a "serious health condition" that makes the employee unable to perform the functions of her position. 29 U.S.C. § 2612(a)(1)(D); Spangler v. Fed. Home Loan Bank of Des Moines, 278 F.3d 847, 851 (8th Cir. 2002). FMLA leave may be taken on a reduced leave schedule when there is "a medical need for leave . . . that . . . can best be accommodated through [a] . . . reduced leave schedule." 29 C.F.R. § 825.202(a), (b). Such medical need includes "[a]ny period of incapacity due to pregnancy, or for prenatal care." 29 C.F.R. § 825.115(b).

The FMLA prohibits an employer from interfering with an employee's right to take medical leave. 29 U.S.C. § 2615(a)(1). "Interfering with the exercise of an employee's rights would include, for example, not only refusing to authorize FMLA leave, but . . . also . . . manipulation by a covered employer to avoid responsibilities under FMLA[.]" 29 C.F.R. § 825.220(b). The FMLA also prohibits an employer from retaliating against an employee for taking or intending to take FMLA leave. 29 U.S.C. § 2615(a)(2). Wages contends that

---

³ Wages's FMLA claim is based on her need to reduce her hours during her pregnancy and on her future maternity leave, which was several months away at the time Defendant fired her. Wages's counsel did not press the latter issue at the hearing. Indeed, the Court finds that the maternity leave issue is too attenuated to be included in the FMLA claims at issue, particularly in light of Wages intervening need for pregnancy leave. Further, there is no indication that Wages's future maternity leave was a factor in her termination. The Court therefore will focus on Wages's request for a reduced schedule under the FMLA.

Defendant violated both aspects of the Act.

### 1. Entitlement

Any violation of the FMLA or its regulations constitutes interference. 29 C.F.R. § 825.220(b). An entitlement claim is a subset of interference claims under which "an employee claims the denial of a benefit to which he is entitled under the statute." Bosley v. Cargill Meat Solutions Corp., 705 F.3d 777, 780 (8th Cir. 2013) (quoting Pulczinski v. Trinity Structural Towers, Inc., 691 F.3d 996, 1005 (8th Cir. 2012)); see also Carlsen v. Green Thumb, Inc., Civ. No. 01–2076, 2004 WL 234406, at *6 (D. Minn. Feb. 4, 2004) (Tunheim, J.) (holding that to establish an entitlement claim, plaintiffs must "demonstrate by a preponderance of the evidence that [s]he was entitled to the benefit denied."). To prevail on her entitlement claim, Wages must establish that she was eligible for FMLA coverage and that she gave notice to Defendant of her need for FMLA leave. Defendant argues that Wages has failed to meet her burden because she was not eligible for FMLA leave on the date of her request and because she did not provide adequate notice.

Wages was fired on November 16, 2009, after informing Defendant that she needed to reduce her hours due to her high-risk pregnancy. She would have become eligible for coverage under the FMLA on November 17, 2009. Defendant acknowledges that it fired Wages because it determined that it could not accommodate her reduced schedule. Defendant argues that Wages's request for a reduced schedule was only one factor in the decision to fire her and that it also considered her task-specific restrictions. Whether the

task-specific restrictions already in place factored into that decision is of no moment, however, because there is no evidence that Defendant had any intent to fire her based on those restrictions. Defendant admits that the hours restriction was the tipping point and therefore the reason it terminated Wages. In other words, Defendant terminated Wages because she needed to reduce her hours, not because she could not vacuum, mop, or shovel snow.

### a. Eligibility

Defendant maintains that it did nothing wrong by firing Wages one day before it would have been required to accommodate her request, because she was not yet an eligible employee. Defendant relies heavily on Hill v. Walker, 737 F.3d 1209 (8th Cir. 2013), for the proposition that employers may terminate employees with impunity for seeking FMLA leave if those employees have been with their employers for less than twelve months. This is a misreading of Hill, which is plainly inapposite. Hill involved an employee who sought to take FMLA leave that would have begun and ended before her one-year anniversary with her employer. Id. at 1215. The Eighth Circuit concluded that Hill was not an eligible employee because "as th[e] time period span[ned] fewer than twelve months, Hill had no FMLA rights when she was terminated." Id. Under those circumstances, there is no question that the FMLA did not apply. Here, however, Wages requested leave the day before she would have become FMLA-eligible and that leave would have extended beyond her eligibility date.

The Eighth Circuit has yet to address the circumstances presented here, but Wages

cites to cases from other jurisdictions that generally support her position, most notably Perada v. Brookdale Senior Living Communities, Inc., 666 F.3d 1269 (11th Cir. 2012). In Pereda, the Eleventh Circuit held that "a pre-eligible employee has a cause of action if an employer terminates her in order to avoid having to accommodate that employee with rightful FMLA leave rights once that employee becomes eligible." Id. at 1275. The court acknowledged that "[w]ithout remedy, the advanced notice requirement becomes a trap for newer employees and extends to employers a significant exemption from liability." Id.

The Court generally agrees with the Eleventh Circuit's holding and reasoning, but the facts in Pereda are distinguishable. In Pereda, the plaintiff gave advance notice of maternity leave, which would have started after she became FMLA-eligible. Id. at 1270. Pereda, like Wages, experienced pregnancy complications and was ordered to go on bed rest a few months before her due date, and at least one month before she became eligible for FMLA leave. Id. at 1272. Pereda's employer fired her while she was on bed rest. Id. The leave at issue, though, was Pereda's future maternity leave under the FMLA, not the leave necessitated by her pregnancy complications, which was apparently covered by non-FMLA leave. Id. Here, as noted, Wages's future maternity leave is not alleged to be a factor in Defendant's decision to terminate her. Rather, the FMLA leave at issue is Wages's need for a reduced schedule based on her pregnancy complications.

Defendant argues that because Wages's hours restriction was effective immediately, there is no way to bridge the gap between the date of the note, November 12, and her eligibility date, November 17. Defendant is incorrect. Regulation 110(d) expressly allows employees to use non-FMLA leave to reach their eligibility date:

> The determination of whether an employee . . . has been employed by the employer for a total of at least 12 months must be made as of the date the FMLA leave is to start. <u>An employee may be on non–FMLA leave at the time he or she meets the 12–month eligibility requirement, and in that event, any portion of the leave taken for an FMLA-qualifying reason after the employee meets the eligibility requirement would be FMLA leave</u>.

29 C.F.R. § 825.110(d) (emphasis added);[4] see also <u>Harrell v. Jacobs Field Servs. N. Am., Inc.</u>, No. 09-CV-02320, 2011 WL 3044863, at *4 (C.D. Ill. July 25, 2011) (holding that § 825.110(d) allowed plaintiff to reach FMLA eligibility date through other forms of leave).

Wages admits that her reduced schedule was to begin immediately, <u>i.e.</u>, Friday, November 13.[5] It is unclear whether Wages's reduced hours required her to miss or shorten her scheduled work days before her FMLA-eligibility date. The record shows that Wages worked 4.25 hours on Friday, was not scheduled to work on Saturday or Sunday, was not called in to work on Saturday or Sunday, and reported for work on Monday. Defendant terminated Wages early in her shift on Monday. There is no evidence in the record as to

---

[4] This version of the regulation became effective as of January 16, 2009, and is therefore applicable.

[5] The Court uses Friday as the operative date because Wages was absent from work due to illness on Thursday.

whether Wages intended to work a full day on Monday, nor is the Court able to determine whether Wages's hours on Friday were as scheduled or shortened due to the hours restriction. The record simply does not establish either way whether Wages's reduced schedule was, as a practical matter, in effect on the two work days before her eligibility date.[6]

Even assuming Wages' reduced schedule was implemented on Friday, there is no evidence that Wages could not have reached November 17th either by working a full day on November 16th or working a reduced schedule using non-FMLA leave, as contemplated by § 825.110(d). Defendant does not contend that Wages was not entitled to use sick leave, personal leave, or vacation time to cover her reduced time until she became FMLA-eligible. The only reason Wages was not able to reach her eligibility date is because Defendant fired her before she could do so. The Court therefore finds that Wages was an eligible employee under the framework established by the FMLA.

      **b.**    **Notice**

Defendant next argues that Wages did not meet the FMLA's notice requirement. FMLA regulations require employees to provide 30 days notice of future leave if "practicable." 29 C.F.R. § 825.302(a). If there is a "change in circumstance" or a "medical emergency," notice "must be given as soon as practicable." Id. "As soon as practicable

---

[6] Defendant fired Wages without having any conversation with her about what her reduced schedule would actually be, so there is no way to know how the 20 hours would have been structured. For example, Wages could have worked five half days, two full days plus a half day, or some other combination of hours to reach the 20-hour limit.

means as soon as both possible and practical, taking into account all of the facts and circumstances in the individual case." 29 C.F.R. § 825.302(b). Wages plainly met this requirement. Wages gave the doctor's note to Defendant on November 13, within one day of receiving the note.

In addition to timing, the notice must also be "sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave." 29 C.F.R. § 825.302(c). Notice may be verbal or in writing and it "need not expressly assert rights under the FMLA or even mention the FMLA." 29 C.F.R. § 825.303(b). The employee must, however, "specifically reference either the qualifying reason for leave or the need for FMLA leave." 29 C.F.R. § 825.303(b). There is no doubt that Wages effectively communicated her need for reduced time and the reason for that need to Defendant. Dr. Shold's note clearly stated that Wages could work no more than 20 hours per week due to her pregnancy.

Defendant nevertheless argues that Wages failed to meet the notice requirement because she did not follow company policy requiring a written application for FMLA leave. But company policy does not trump the statutory language. Because Wages's reduced-schedule request was unforeseeable, she was neither required nor able to complete FMLA paperwork in advance of her request. The FMLA requires notice "as soon as practicable" under such circumstances, and Wages met that requirement.

Defendant also argues that Wages did not meet the notice requirements set forth in

Bosley v. Cargill Meat Solutions Corp., 705 F.3d 777 (8th Cir. 2013). Bosley is inapplicable, however, because it involved constructive notice of FMLA leave, which is not at issue here.

Based on the facts presented, the Court concludes that Wages is entitled to summary judgment on her entitlement claim.

### 2. Retaliation

The FMLA also provides protection against retaliation for exercising FMLA rights. Specifically, it provides that it is "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2). To establish a prima facie case of retaliation, Wages must show that (1) she exercised rights afforded by the FMLA; (2) she suffered an adverse employment action; and (3) the adverse employment action had a causal connection to the protected activity. Smith v. Allen Health Sys., Inc., 302 F.3d 827, 832 (8th Cir. 2002). "Unquestionably, termination is an adverse employment action." Wierman v. Casey's Gen. Stores, 638 F.3d 984, 999 (8th Cir. 2011).

Having already determined that Wages was FMLA-eligible, the only point remaining in dispute is whether Wages's termination was causally connected to her requested FMLA leave. Defendant, rather remarkably, argues that "Wages has adduced no evidence that the termination was affected by the fact that she was attempting to exercise FMLA leave." (Def.'s Supp. Mem. (Docket No. 43) at 28.) Yet there is no dispute that Defendant terminated Wages solely because she requested a reduced schedule under the FMLA. Under

these circumstances, there is a direct causal connection between Wages's assertion of rights under the FMLA and her termination.

Although Wages did not seek summary judgment on this aspect of her FMLA claim, there is no genuine issue of material fact precluding summary judgment in her favor.

### B.     Minnesota Parenting Leave Act

Wages also claims that Defendant violated the Minnesota Parenting Leave Act, which provides that:

> An employer must grant an unpaid leave of absence to an employee who is a natural or adoptive parent in conjunction with the birth or adoption of a child. The length of the leave shall be determined by the employee, but may not exceed six weeks, unless agreed to by the employer.

Minn. Stat. § 181.941, subd. 1.  The parties make the same arguments as above with respect to Wages's MPLA claim.  Although there is little case law construing the MPLA, it appears on its face to apply solely to post-birth leave rather than leave associated with pregnancy. As noted, Wages anticipated maternity leave, which was several months away, is too attenuated to serve as the basis for Defendant's liability.  Wages therefore does not have a viable claim under the MPLA and Defendant is entitled to summary judgment.

**C.     Title VII/MHRA**

Wages's final claims are for discrimination under Title VII of the Civil Rights Act of 1964 and the coextensive Minnesota Human Rights Act. <u>Fjelsta v. Zogg Dermatology, PLC</u>, 488 F.3d 804, 809 (8th Cir. 2007). Both statutes prohibit discrimination in employment on the basis of sex, which includes "pregnancy, childbirth, or related medical conditions." 42 U.S.C. §§ 2000e–2000e–17, 2000e(k); Minn. Stat. §§ 363A.08, subd. 2, 363A.03, subd. 42. "Thus, to prevail on her pregnancy discrimination claim, [Wages has] the burden to show that she was 'treated differently because of her pregnancy' or a pregnancy-related condition." <u>Deneen v. Northwest Airlines, Inc.</u>, 132 F.3d 431, 435 (8th Cir. 1998).

As noted, the record establishes that Wages was fired because she needed to reduce her schedule. There is no evidence, however, that Wages's pregnancy was a specific factor in Defendant's decision. Indeed, the record is devoid of any indication that Defendant bore animus towards Wages because she was pregnant; Wages's pregnancy just happened to be the reason she needed a reduced schedule. Absent specific evidence of pregnancy-related animus, there is no basis to conclude that Defendant discriminated against Wages "because of" her pregnancy. Defendant is entitled to summary judgment on this claim.

14

**CONCLUSION**

There are no genuine issues of material fact precluding summary judgment in favor of Plaintiff on her FMLA claim and in favor of Defendant on Plaintiff's MPLA, Title VII, and MHRA claims.  Accordingly, **IT IS HEREBY ORDERED that:**

1. Plaintiff's Motion for Partial Summary Judgment (Docket No. 39) is **GRANTED**; and

2. Defendants' Motion for Summary Judgment (Docket No. 41) is **GRANTED in part and DENIED in part** as set forth above.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: May 8, 2014

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge